Calling Case 16-5170, John Doe v. University of Kentucky Hall. Oral argument not to exceed 15 minutes per side. Mr. Cox for the comment. We'll give counsel a moment to get settled. Good morning. The appellant has reserved three minutes for rebuttal, your honors. Thank you. May it please the court. We represent an incoming freshman at the University of Kentucky that we've referred to in this matter as John Doe. Mr. Doe was an incoming freshman in what would have been the fall semester of 2014 at UK. There's another student we've referred to in this matter as Student A. She was also an incoming freshman. They were both athletes, although in the underlying action we have agreed not to refer to the specific sport in which they were involved to further insulate their possible identities. These two actually had met before they arrived at UK because of the athletics part of it. They had actually previously been in Lexington, Kentucky and had met and had taken a liking to each other and had begun texting. Once they arrived at UK, there clearly was an interest. They both had a mutual interest in each other. Ultimately, they ended up having sexual relations. What's important as sort of a start off to all of this is to understand that Student A was never a complainant about that. In fact, the position has been that this was actually consensual sexual relations. There's no question there was some alcohol involved, although people can argue, I guess, out of the beholder about the level of drinking that went on. It's clear that she was not a complainant. What started this process was that an anonymous person, and truly someone, I don't know who that person is, who apparently was present on that evening at a party where the others were all present. I can only assume got the idea that because there was drinking involved, that meant that she was incapable of consenting. This anonymous person went and reported this to the University of Kentucky. Of course, the University of Kentucky, like a lot of universities, particularly under Title IX and oversight of the Office of Civil Rights, the Department of Education, and there's a dear colleague letter that's been referred to, they are now beginning to process these as disciplinary actions rather than just deferring to some kind of complaint that might normally or conventionally be made to local authorities if someone thinks actually that some kind of a crime has occurred. But that's not what occurred here. Does the student code cover activities on government, on the UK property, or does it apply just to all students, no sexual activities anywhere, or is there something else? Your Honor, although I don't think it's an issue in this case because this actually occurred on property owned by UK, there's a lot of new, I wouldn't even call them dormitories anymore, they're like really nice apartments that the university owns. So it was on university property. But I'm aware of some other matters, not this one, where UK takes the position that they actually, through their disciplinary system, do govern students regardless of whether they're actually on the property or not. So I'm aware of other instances. That's not this case. That's not this case. We would have UK property anyway if that matters to the court. So in this case, I just want to emphasize that student A was not a complainant, and UK came. In fact, she was interviewed by UK, and she said she was not interested in pursuing it. Now, that's where UK, despite that, locks in because a lot of things have changed in the way universities are handling these types of complaints, regardless of who makes them. And so UK then began investigating this. And they initiated some charges or claims, if you want to call them, through their disciplinary process against Mr. Doe. Let me just ask. Yes, Your Honor. At the time of the filing of the case, it seems to me that the disciplinary appellate process, at least, was still underway. Has that been concluded? We've had, I was going to touch on this, but we've actually had two of these disciplinary processes where there's this hearing, which we don't think is much. I know I've laid that all out in the briefing. And each time, we also took an appeal. There's an internal appeal, what's called the UAB, the University Appeals Board. It just so happened that in each of those instances, there was a particular professor, in fact, someone I know well, who's a law school professor and who's a con law scholar, in my opinion, at the University of Kentucky. And in both cases, he actually wrote opinions reversing the hearing conclusion that our client was responsible. He used to be the dean of the college, right? No, actually, this was Paul Salamanca, Your Honor. They're now trying to recruit, interestingly, former Dean Lawson, Professor Lawson, who wrote the evidence law handbook. This has become such a mess. They have recruited him out of retirement to try to come and sit. They're trying to revamp the whole system and basically have him sit and preside over these disciplinary hearings where there are claims of some kind of sexual misconduct. That's really coming after the fact thing. If the process is still ongoing, is this matter really ripe for this court? And the second part of the question is, if you say that it is ripe for this court, what relief would you have this court issue? Your Honor, that is getting right to the heart of it. I appreciate that. I would say there's two things that are directly responsive to your point and to your question. And the first one is this. It is first our argument, and the merits of this were not addressed below because of the abstention. So really we're here on mostly an abstention idea, first and foremost, and there's also a damages qualified immunity issue. But we actually briefed below the argument. If you go and look at the sexual misconduct policy that UK had in place on the date of these particular sexual relations, it is our position that that is a patently unconstitutional, facially unconstitutional provision. And I know it is because not just from looking at it. By the way, I got involved with the second administrative hearing. Well, I didn't participate. I sat there as a potted plant at the second hearing because I wasn't allowed to participate. But I also did process the internal appeal. You couldn't give the accused any advice at all? You just had to sit there? Your Honor, all I was allowed to do was whisper in his ear, and I could not. Just barely, Your Honor. It was a very stilted process. I dare say I thought due process was mangled thereby. I could not address the panel at all. I was not allowed to question any of the witnesses. The best I could. Could you provide questions that the hearing officer would ask the witness? What I would do is I would whisper in my client's ear. Again, he's, I think, 18 years old at that point. Obviously he hasn't even been to college really yet or had any law training. He's trying to write down what I'm saying and passing them up. So, yes, we were doing that process. But I would also say that at the particular panel, that second panel hearing that I attended, the presiding panel member, who also had no legal training, just really was reticent to ask some of the questions. He asked them in ways where they weren't, like if it was a leading question to get a specific answer, he would turn it into just kind of an open-ended question and it didn't really corner the point. Again, that gets into all the beauties of cross-exam, which wasn't had here. But Judge Donald, to go back to your point, there are two arguments. One is that we have this patent unconstitutionality argument. And like I said, I know not just from reviewing the provision, but at that second hearing, the fact that first off the provision is void for vagueness under our argument because it doesn't identify at what point there was clearly consent here. They're just vitiating it after the fact with alcohol. So we have consent, but then you're saying, no, sorry, we're taking it back, not consent. So the point is that that wasn't my client's perception. His perception was, yes, they had been drinking. But he had honestly a good faith belief on his own that she in fact had the capacity to consent. There had been a course of conduct leading up to that point and there was a discussion. And I don't want to get too far into the weeds, but at the time of the sexual relations, she's the one that actually requested to have sexual relations. There was a discussion about contraception. She also removed her own clothing. So my client, in good belief, thought there was consent. She also wasn't the complainant. So what's happening here is that with this void and vague provision, these panels, these untrained panels are deciding that on their own that she couldn't give consent. Younger applies to things besides criminal prosecutions, right? I'm sorry, Your Honor. Younger provision provides for other kind of hearings besides just a criminal one. It does, Your Honor. I was going to jump into that argument as well. It applies to bar association hearings, for instance. It does. I'll go ahead and jump to that very quickly, Your Honor. It is my position that the way Younger works, Younger certainly tells a federal court that, yes, you may have jurisdiction under 1983, but when an ongoing state criminal proceeding is going on, we want you to abstain. But where it's been expanded is into these sort of administrative-type actions. But, Your Honor, typically where it's being extended to these things that are akin to criminal proceedings are really where the state, in my opinion, is licensing. Like they have licensing of professionals. Or the state issues a permit that allows a person or a company to engage in certain types of work. And then the state then initiates an administrative action that's maybe against that license or that permit with some kind of discipline. But there's also a process there. And it's those types of actions that I believe are what the courts are calling akin to criminal proceedings. But this U.K. process is nothing like that. Okay. So if we find that the requirements of Younger are met, this court, the federal court, would have to abstain unless, of course, there's a finding that the proceedings were brought in bad faith, correct, or that the process itself is unconstitutional. Your Honor, it's my belief that the way that analysis works is that you first have to decide whether this is akin to criminal proceedings. And our response to that is there's nothing about this U.K. process that's remotely even similar to a criminal process. All the trappings of a criminal process. Well, they're prosecuting a complaint against John Doe. And so it does have, when you were describing the proceeding, it sounded a lot like a grand jury proceeding. But, you know, I'll take your point now. But my question was, if we find that it applies, and I know you say that it doesn't apply and you were going into why, but if we find that it does apply, then. There's still an exception. Right. And the exceptions would be that it's brought in bad faith or it's unconstitutional or something else. And so I want to know. I got you. The first exception, actually, is even if you think it's akin to that type of proceeding, the fact that there is an argument that the policy itself is facially or patently unconstitutional is an exception under Younger. And, by the way, this is not akin to a criminal proceeding because that's one of the things the process can't give us. UK is not in a position to even tell us that their own policy is, in fact, facially unconstitutional. I'll go back to where I started before and ask you, if you prevail, what does relief look like? I believe it's one of a couple of things, Your Honor. The first thing is we're asking if the court gets past abstention and gets to the merits on the facial argument and they agree with us, then we're done. Then there would be a permanent injunction that they have to stop processing a disciplinary proceeding against my client. That's number one. Secondly, even if the court gets past that one, the court could also enter a directive or an order, an equitable relief, saying this process, because of what's at stake and what this is, you have to give due process. So you have to let the attorney participate. You have to allow cross-examination, including of student A. And there's a few other things we've noted. You have to give due process. You can't discipline the state. I cited that Lawrence v. Texas case. When you're talking about private consensual sexual relations, you cannot punish someone related to that unless you do it. Are there other questions, Judge? No, I do have one, and that is that how could we grant the kind of relief you're talking about? Because by definition, when the court is stained, you don't have a record that's produced that would enable us to grant the ultimate relief that you're seeking, almost. The most we could do if we felt the abstention was erroneous, in my view, would be to send it back to the district judge and tell him to proceed. Judge Guy, I'm agreeing with you. That's an appellate postural issue, and I would say that because the lower court did not get to the merits, that we're stuck where he just abstained and didn't look at the merits. So you're right in that sense. We would just have to go back to the district court. If this court agreed that we get a round abstention, it would be sent back, and the court would then need to address the merits of the motion for TRO or the motion for preliminary injunction that we filed. And, of course, there's the other issue about the damages. That's it. Judge Silo, were there other questions from you? But your point's well taken, Your Honor. You'll have your rebuttal time. Thank you so much. Please, the court. Judge Cox. Apologies, I sound like a broken record. The University of Kentucky is not a party to this appeal. It originally was named and then dismissed by Judge Hood, and the dismissal of the university has not been appealed. The two claims are against – It's two for two? Yes. Two in a row. It's been quite a week, yes, Your Honor. The two claims in the case are an official capacity claim against the dean of students and the individual capacity claim – that's for injunctive relief – and an individual capacity claim for damages against Denise Simpson, both of which were addressed by the lower court, and we asked that they be affirmed. Your Honor, Judge Hood was correct in abstaining from hearing this motion under the guidance of the recent Sprint Communications case. What Sprint makes clear is there's really three critical issues that a court will address when confronted with an abstention motion. First, is this what I'm going to call a NOPSI category. That's the New Orleans Public Service Incorporated category. There are three categories that Sprint tells us abstention may apply to. Second, do the Middlesex factors apply? That's the state bar case. And then thirdly, do any of the exceptions to Younger apply? So first, let's look at this NOPSI category. Three categories under that. Is it a state criminal proceeding? Is it a state civil proceeding with an interest or enforcing an order? That's not this case. This case is the other element under NOPSI. It's a state civil proceeding that's akin to a criminal prosecution. Your Honor says that this just applies where it's something that's regulated by the state, like the bar association. Is that correct? No, it's not when it's just regulated by the state. What Sprint says that a quasi-criminal proceeding is, is really, again, three factors. That the matter is instituted in an effort to sanction who the federal plaintiff is. Clearly here, the university instituted these student disciplinary proceedings against its John Doe student for a wrongful act. He's been accused of violating the sexual misconduct policy. Third, that the matter begins with an investigation and culminates in the filing of a complaint and charges. The facts of this case are undisputed. Another female student made a report to the university that the female student issued here had been sexually assaulted by the appellant. The university didn't fabricate the claim, which addresses the bad faith element. This was another female student who reported the sexual assault. They spoke with the victim through the investigation. And she continued in this process. She testified at both of the hearings. She has been intricately involved. And as the university attempted to set the third hearing, there has been constant communication with her counsel. With student A's counsel. Yes, Your Honor. Yes, Your Honor. This is not a situation where student A is not participating. What's your best case to showing a factual situation like this? Is there one? I know you're going through these categories from these other cases. As it relates to abstention or as it relates to the due process issue? Well, as abstention, that's what we've got here. As it relates to abstention, probably three cases. One sprint tells us what we need to do and how we need to follow the process. When you look at the Dayton Christian Schools case, which obviously emanated from this circuit up to the Supreme Court, that was a state civil rights commission investigation into an employment context. Abstention was appropriate there. Huffman, another case from this circuit that goes to the Sixth Circuit. That was a nuisance proceeding that was instituted by a municipality to close a theater that was showing obscene movies. So those cases set the parameters for this guideline. And then most recently, I realize it's obviously not the circuit level, but this shows how courts throughout the country are addressing these contexts. There was a case that just came out in November, Chaudhary versus the University of California. And that shows the line of cases that Judge Hood followed here. There were two cases from Arizona. These are all cited on page 29 of our brief. There's a Third Circuit case, Red Bank Board of Education. Judge Seiler, I know you asked me for my single best case, and I apologize because I think that is the cumulative effect of all that that shows. Are these proceedings at the University of Kentucky similar to honor code violation hearings that some schools have? I know there are quite a few in the country that do have them, and I think that it might be similar, but maybe not. It's somewhat similar, but quite a bit different. Let me see if I can answer your question by telling you how the University of Kentucky student disciplinary proceedings are akin to a criminal prosecution. There's at least ten facts. There's a notice and report to the university, which occurred here when another female friend of the victim reported to the university. There's an investigation that's noted in the policies. Third is the charges issued against the responsible student. Fourth, the responsible student receives notice of the charges. There's a hearing. There's attorney assistance. There's cross-examination. I realize it's not the level of attorney participation that this student would like, but this court has dealt with that in the Flame case. It dealt with it four months ago on a case for the University of Cincinnati and Dovey-Cummins. Student disciplinary proceedings do not carry the same due process protections that it would at a full criminal trial when literally the liberty interest and the life interest may be at stake in those situations. Eighth, the accused student has the opportunity to present his own defense or her own defense. Ninth, if found responsible, there's possible sanctions. Tenth, you have the right to an appeal, as this case clearly demonstrates. But third, to your point, Judge Donald, about do any of the exceptions to Younger apply. There's no evidence of bad faith. There are no real allegations of bad faith. This was a process that began when another female student at the university reported the sexual assault. And then the victim has participated in the matter time and time again. As to whether the policy itself is unconstitutional, that's not just a let's read it and on its face is it unconstitutional. What Younger says, and this is an incredibly high burden, and I apologize for reading the quote. It's on 32 of our brief. But that the policy must not only be flagrantly and patently unconstitutional, it must be so in every clause, sentence, paragraph, and in whatever manner and against whomever an effort may be made to apply it. That is a tremendously, tremendously high standard. Aside from the abstention issue, the district court was also correct in dealing with the separate claim for damages against Ms. Simpson. We have briefed at length the due process protections that apply in university disciplinary proceedings. Most importantly, let me address the issue of qualified immunity. Judge Hood was correct in determining that clearly established law did not dictate that a university official must do X or can't do Y in this case. And there's a number of fallacies that the plaintiff points to. And frankly, the university saw those on its own, reversed it, and ultimately passed an entirely new policy. Professor Lawson, who I know you're familiar with, Judge Seiler, is one of three potential hearing officers that now will oversee these types of hearings. He was assigned to oversee this third hearing in November of 15 at the time that everything was put on hold for the pendency of the lawsuit. What happens if we decide in your favor and uphold the abstention? This goes through and this student is penalized in some way. Can he come back in here and resume this case, resurrected, so to speak? Absolutely. I think it would be a new case. If he thinks there's an error, the old errors will not be repeated. And I trust Professor Lawson will oversee that. In terms of the questions that are to be submitted, and hearings have occurred under this new policy, there was an effort made to have this hearing, but with the pendency of this lawsuit, neither of the other parties wanted to proceed and the university respected both of their wishes. Did Judge Hood make an error by finding that there's qualified immunity at this point in the case? You mean since he was abstaining on the injunctive relief claims? No, Your Honor. There's separate claims. There's separate parties. The claims against Ms. Simpson involved for errors that had occurred in the past. As another panel of this court just held, those errors were corrected, so the claim is not ripe, as was referenced earlier. He has not yet been sanctioned because the process hasn't been completed. But even to the bigger issue of can you abstain while addressing qualified immunity, this court repeatedly and the Supreme Court in Bruce Obey Hagan and other cases has said that immunity issues need to be decided at the earliest possible moment. There were separate claims against Ms. Simpson. This court in Summer v. Lease, we cite it in footnote 14, addresses that there's a distinction between whether to abstain and whether to address the qualified immunity argument. But by and large, those qualified immunity cases that emphasize acting quickly aren't in the abstention context. That's your run-of-the-mind qualified immunity case. That's the whole basis of the doctrine to keep people not only from the expenses and whatnot of even going through a trial and so forth. That's where that doctrine lies. That is true in part. However, Ms. Simpson is not the official who would be in charge of anything. In fact, she is no longer a university employee. So she is entitled to have the claims against her addressed as expeditiously as possible. But even to the point, it's clear that she violated no clearly established law. While there were procedure errors that the university fixed, it's not clearly established law that those were errors. When this court has said in the past that cross-examination can be limited, as it said in Flame, as it said recently in Doe v. Cummins, that accused students are not entitled to the full panoply of procedural protections that you would have at a full evidentiary hearing. So in the face of those cases, there's certainly at least room for university administrators to disagree as to what can be involved. Your Honor, thank you for your time this morning. Thank you. Mr. Ross. Thank you, Your Honor. I'll try to hit these very quickly. Going back to the issue of the younger abstention, first off, whether or not it qualifies. This is before you get to the exceptions that we talked about earlier, Your Honor. I mentioned that to me that when you look at the cases that have extended younger beyond criminal proceedings to what they call akin to, the akin to line, to me what those often are are the state licensing and permit issues where there's discipline being pursued. But what I wanted to point out is, and I think this is very important, is that unlike what the UK has in those cases, there's often a standard Administrative Procedures Act involved. In other words, we have a federal APA. I would believe all of the 50 states probably have some version of Administrative Procedures Act. I can say that in Kentucky, KRS Chapter 13B is the state APA. If you're in a state agency in Kentucky, you get Chapter 13B. It is a full-on due process system. You get a lawyer who sits as an administrative law judge. You get the right to have your attorney fully involved. You get a notice of whatever the complaint or the charges are on your license or your permit. There's a hearing. You get to call witnesses. You get to cross-examine. There's full participation. It's just like a trial, except it's an ALJ. It's an administrative hearing. Most of those cases, Your Honor, it's my position, are really akin to, because at least they've given you the kind of system that a criminal proceeding would give you. This UK process is nothing like that. Really, if they wanted to clean this up and try to get younger abstention, why don't they go past the statute and say that their UK process has to be run under Chapter 13B of KRS? I'd have a pretty difficult argument if that was the case, because then I could say, well, you're right, you get full-on due process with that APA being applied, but that's not what's going on here. So that's why this is nothing like that, Your Honor. The other thing I wanted to mention on the, give me just a second, Mr. Bowman mentioned under Younger about whether or not this is facially unconstitutional or not, and how all aspects of it have to be. But he also, one of the elements he said was how it's actually used. I participated in the second one, and this really just showed itself. I put this in the brief, Your Honor. It was mentioned, I think it's even in a footnote. One of the questions that my client, I had my client write down and submit to the panel, the presiding panel member, was to get at what my client, my client was trying to establish that there had already been a sequence between the two where he, to support the fact that he had a good faith belief that she had the capacity to consent. The problem is that, first off, the panel was actually hostile to that, because they've been trained that they're only to look at one side of it. They're looking at her side of it, and they're looking at whether or not she drank enough that they're going to take the consent away. So sum up now, because your light is on. Oh, you're right, I'm sorry. Well, I'll sum that up. So the point being that I know it's being applied unconstitutionally, because in this case what they wrote is the hearing panel finds that Doe's personal definition of consent is in conflict with the university's definition of consent. But you've already admitted that the record is not sufficiently developed that we could ever get to that issue. So thank you for your, at least not at this stage. Oh, Your Honor, all I was trying to say is I think that for younger purposes, you have to do what's called a look-see. You're not going to resolve those merits, but you need to see that there's enough there. That's all. Thank you. If that helps. Thank you. Thank the parties for your argument and your submissions. The matter is submitted, and we will issue an opinion in due course. Thank you.